IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION[1]

MICHELE DAWN BROWN                                                    PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:13CV1071-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER                              DEFENDANT
SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

        This cause is before the undersigned United States Magistrate Judge for a Report and

Recommendation regarding the appeal by Michele Dawn Brown of the Commissioner of Social

Security's final decision denying Brown's application for a period of disability, Disability

Insurance Benefits (DIB), and Supplemental Security Income (SSI).  In rendering this

recommendation regarding Brown's appeal, the Court has carefully reviewed the administrative

record regarding Brown's claims (including the administrative decision, the medical records and

a transcript of the hearing before the Administrative Law Judge ("ALJ")); the plaintiff's filings,

the defendant's Motion to Affirm the Decision of the Commissioner, and its accompanying brief.

For the reasons discussed in this Report and Recommendation, the undersigned recommends that

the Defendant's Motion to Affirm the Decision [14] be granted, and Plaintiff's Motion for

Summary Judgment [11] be denied.

_____

        [1]An Order of Transfer was entered in this case on December 26, 2013, pursuant to H.R.
2871, Realignment Of The Southern Judicial District of Mississippi, Pub. L. No. 113-61, 127
Stat. 665 (2013), signed into law on December 20, 2013.  The Realignment Act consolidated the
former five divisions of the Southern District of Mississippi into four divisions.  Based on
Plaintiff's indication of Newton as her county of residence on the Civil Cover Sheet [1-1], the
Court transferred this action to the newly formed Northern Division of the Southern District of
Mississippi.

## I. FACTS

### A.  Procedural History

Brown was born on September 8, 1966, and was forty-three years of age on the date of the ALJ's decision. [10-1], Tr. 199, 32.[2] She applied for a period of disability, DIB, and SSI on June 22, 2005, with an onset date of October 28, 2004.  Id. at Tr. 10; 116-119; 199-208. Plaintiff alleges that the illnesses, injuries, or conditions that limit her ability to work are asthma, back injury, arthritis, migraine, nerve problem in limbs, and bone spurs in feet.  Id. at Tr. 255. She has a high school equivalency diploma and two years of college. Id. at Tr. 55.  Her past work history includes employment as a collections clerk, cashier, retail manager, teacher's aide, and stock clerk.  Id. at Tr. 56.

Plaintiff's applications were denied initially and upon reconsideration on October 26, 2007.  Id. at Tr. 116-19.  She requested an administrative hearing, which was held on July 21, 2008.  Id. at Tr. 77-115.   On August 27, 2008, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  Id. at Tr. 120-29.  Thereafter, the Appeals Council vacated the decision, remanding the action to the ALJ for a new hearing and decision.  Id. at Tr. 130-32. After another hearing, the ALJ again issued an unfavorable decision.  Id. at Tr. 7-24.  The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner.  Id. at Tr. 1-5.  Brown then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### B.  Hearing Decision

In his decision, the ALJ worked through the familiar sequential evaluation process for

---

[2]Citations reflect the original pagination of the administrative record.

determining disability.[3]  In his decision, the ALJ found that Plaintiff has the severe impairments

of asthma, mild lumbar spondylosis, obesity, and fibromyalgia.  Id. at Tr. 12.  In addition to the

foregoing severe impairments, the ALJ found that she has non-severe impairments of status post

left wrist fracture, bone spurs of the feet, irritable bowel syndrome, and restless leg syndrome.  Id.

at Tr. 13.  The ALJ also determined that her alleged mental impairments of depressive disorder,

not otherwise specified, and anxiety are non-severe.  Id.  Considering these severe and non-

severe impairments, the ALJ concluded that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  Id. at Tr. 14.  The ALJ then looked to the entire record

---

[3]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)     whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)     whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)     whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)     whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)     whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

and made detailed findings supporting his conclusion that Plaintiff has the residual functional

capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b).  Id.  With these limitations in mind, the ALJ determined that Plaintiff is capable of

performing her past relevant work as a collection clerk, cashier, retail manager, and teacher's

aid.  He further found that even if she were limited to sedentary work, she could still perform her

past relevant work as a collection clerk.  Id. at Tr. 16.  Accordingly, the ALJ found that she was

not disabled from October 28, 2004, through the date of the decision, December 9, 2009.  Id. at

Tr. 17.

### C.  Medical History

The Court has reviewed the medical record, as well as the detailed medical record

summaries as set forth in the hearing decision, Plaintiff's filings, and Defendant's brief, and has

determined that a detailed recitation of the medical record is not necessary in this Report and

Recommendation.

### II. STANDARD OF REVIEW

The undersigned recognizes that this Court's review is limited to an inquiry into whether

there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402

U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied.  42 U.S.C. §

405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019,

1021 (5th Cir. 1990).  The Fifth Circuit has defined the "substantial evidence" standard as

follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and
> is:
> > such relevant evidence as a reasonable mind might accept to
> > support a conclusion.  It must do more than create a suspicion of

the existence of the fact to be established, but "no substantial
evidence" will be found only where there is a "conspicuous
absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988 )(quoting Hames v. Heckler, 707 F.2d 162,

164 (5th Cir. 1983)(citations omitted)). In applying the substantial evidence standard, the court

must carefully examine the entire record but must refrain from re-weighing the evidence or

substituting its judgment for that of the Commissioner. Ripley v. Chater, 67 F.3d 552, 555 (5th

Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and

not for the courts to resolve. Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the

Commissioner's decision is supported by the evidence, and the proper legal standards were

applied, the decision is conclusive and must be upheld by this court. Paul v. Shalala, 29 F.3d

208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S.Ct.

2080, 147 L. Ed. 2d 80 (2000).

## III. DISCUSSION OF THE ALLEGED ERRORS
### AND APPLICABLE LAW

The Plaintiff argues that the ALJ's decision should be reversed on four bases, as follows:

1. Did the Defendant Commissioner use proper legal standards to evaluate
Plaintiff's severe impairments?

2. Did the Commissioner consider all of the Plaintiff's functional limitations
resulting from her impairments?

3. Did the Commissioner give proper consideration to medical opinion evidence?

4. Did the Commissioner properly evaluate credibility?

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Plaintiff is not disabled, that the ALJ applied proper legal standards, and that the Commissioner's decision must be upheld.

Once again, the standard of review for this court is clear.  The ALJ's decision on disability must be upheld if it is supported by substantial evidence.  The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled.  Harrell v. Bowen, 862 F.2d 471, 480 (5th Cir. 1988). When the record contains substantial evidence to support the ALJ's decision, the Court must give considerable deference to the ALJ's evaluation of the plaintiff's credibility and severity of limitations. Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991). Furthermore, as stated above, if the proper legal standards were applied, the decision is conclusive and must be upheld by this court.  Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L. Ed. 2d 80 (2000).

A.  Did the Commissioner use proper legal standards to evaluate Plaintiff's severe impairments?

The Plaintiff first argues that the ALJ applied an improper legal standard to evaluate Plaintiff's severe impairments by failing to apply the standard found in Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985).   In Stone, the Fifth Circuit considered the regulation that defines a severe impairment as one that  "significantly limits [a claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and held that this definition was inconsistent with the Social Security Act.  The court stated the correct severity standard as follows:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Stone, 752 F.2d at 1101.  Moreover, the court stated that in the future, it would assume that the ALJ had applied an incorrect standard "unless the correct standard is set forth by reference to [the Stone opinion] or another of the same effect, or by an express statement that the construction [given by the Stone court] to 20 C.F.R. § 404.1520(c) is used."  Id. at 1106.  Brown argues that remand is required because the ALJ failed to apply the Stone standard, observing that the ALJ defined a non-severe impairment as one which causes "no more than a minimal effect on an individual's ability to work."  This language raises the issue of whether this "minimal effect" standard is equivalent to, or at least consistent with, the Stone standard.

The present confusion concerning the appropriate standard originates in post-Stone Social Security Administration rulings.  After Stone, the regulations regarding severity remained essentially the same.  However, the Administration responded to Stone and its standard by issuing a ruling attempting to clarify its policy for the determination of severity.  In the ruling, the Administration stated that an impairment would be considered non-severe if it was a slight abnormality having only a minimal effect on the ability to work.  SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985).  A subsequent ruling used this same "minimal effect" language.  See SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. 1996)   Thus, as one court has observed, it appears that the Administration views this minimal limitation standard as consistent with the Stone standard.  See Acosta v. Astrue, 865 F.Supp.2d 767, 779-82 (W.D. Tex. 2012).  Not surprisingly, ALJs often cite to this regulation or quote its language.

Adding to the confusion in this circuit is the fact that the Fifth Circuit has occasionally

used this language in its opinions. See, e.g., Loza v. Apfel, 219 F.3d 378, 399 (5th Cir. 2000)

(directing that on remand, the ALJ is to determine whether claimant's mental impairments were

merely "a slight abnormality of minimal effect on ability to work"); Brunson v. Astrue, 387 Fed.

App'x 459, 461 (5th Cir. 2010) (unpublished decision) (per curiam) (stating that an impairment

is not severe if it has no more than a minimal effect on ability to do basic work activities).  As a

result, some district courts in this circuit have concluded that the minimal limitation standard is

equivalent to the Stone standard.  E.g., Acosta, 865 F. Supp. 2d at 782-83.   Other courts,

however, have reached the opposite conclusion.  E.g., Padalecki v. Astrue, 688 F. Supp. 2d 576,

580-81 (W.D. Tex. 2010).

The language of Stone, however, is clear:  It allows for a minimal effect *on the individual*

but makes *no* allowance for a minimal interference *with the ability to work.*  While the Fifth

Circuit has occasionally referred to "minimal effect" on the ability to work, it has never

specifically addressed the issue of whether this standard is consistent with Stone.  The

undersigned believes that unless and until the Fifth Circuit holds that a severity analysis may

properly allow for a minimal effect on an individual's ability to work, the better course is to

apply Stone to require that a medically-determinable impairment having any effect on the ability

to work be characterized as severe.

However, failure to cite to the correct standard does not necessarily mandate reversal.

Stone created only a presumption, and where the ALJ's written decision otherwise indicates that

the ALJ applied the correct standard, or where the substantial rights of the plaintiff are not

affected, the failure of the ALJ to cite to Stone or track its precise language does not require

remand.  See Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012); Hampton v. Bowen, 785 F.2d

1308, 1311 (5th Cir. 1986); see also LeBlanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3

(5th Cir. 1996) (unpublished table decision) (per curiam).

Turning to the ALJ's decision, the ALJ cited Stone in his analysis and thoroughly

discussed the plaintiff's various alleged ailments and how they would affect her job

performance.  However, his nuanced definition of "non-severe" did not faithfully track the Stone

definition.  The ALJ first defines "severe" in his discussion of  "step two" in the analysis, stating,

as follows:

> An impairment or combination of impairments is "severe' within the meaning of
> the regulations if it significantly limits an individual's ability to perform basic
> work activities.  An impairment or combination of impairments is "not severe"
> when medical and other evidence establish only a slight abnormality or a
> combination of slight abnormalities that would have no more than a minimal
> effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social
> Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).

[10-1], Tr. 11.  Employing this definition of "severe," the ALJ determined that Plaintiff has the

severe impairments of asthma, mild lumbar spondylosis, obesity, and fibromyalgia.  Id. at 12.

As to non-severe impairments, the ALJ determined that Plaintiff's conditions of status post left

wrist fracture, bone spurs of the feet, irritable bowel syndrome, and restless leg syndrome are

"non-severe," concluding Brown's "non-severe" impairments are those that "result in no more

than minimal functional limitation and/or do not meet the requisite durational requirements of

the Act (*Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985))."  Id. at 13. The ALJ also determined

that Plaintiff's depressive disorder, not otherwise specified, and anxiety, considered singly and in

combination, are "non-severe."  Id.

Plaintiff argues, in general, that the ALJ used the wrong standard to evaluate the severity

of her impairments.  She asserts that the ALJ's failure to apply the Stone standard is legal error,

not procedural error, therefore the claim must be remanded to the Secretary for reconsideration.

In her Brief in Support of Motion for Summary Judgment [12], Brown fails to present

any specific arguments challenging the ALJ's determination that her conditions of status post left

wrist fracture, bone spurs of the feet, irritable bowel syndrome, and restless leg syndrome are

"non-severe."   In her reply brief, however, she argues that with regard to these "non-severe"

conditions,  "[t]he twelve month durational requirement is a separate issue," yet she fails to

present any argument as to the durational requirements.  Reply Brief, [16] at 3.  Accordingly,

although Plaintiff facially attacks the standard by which the ALJ evaluated the severity of the

wrist fracture, bone spurs, irritable bowel syndrome, and restless leg syndrome, the Court

concludes that Plaintiff fails to make any substantive argument as to these conditions.

Furthermore, it appears that the ALJ based his conclusion on Plaintiff's failure to meet the

durational requirement, in addition to finding that these conditions cause a minimal functional

limitation on the Plaintiff, with proper citation to Stone.  Indeed, a review of the medical records

bears out the ALJ's conclusion that these conditions would not meet the durational requirement

of the Act, which Plaintiff apparently concedes. Accordingly, because the ALJ based his

decision on the durational requirement, with minimal functional limitations, the ALJ's alleged

failure to apply the Stone standard in a proper manner does not provide a basis for remand.

As to her alleged depressive disorder and anxiety, Brown focuses the bulk of her

argument on the method by which the ALJ evaluated these alleged impairments, arguing that she

was harmed by the ALJ's failure to apply the proper severity standard when he did not include

depression as one of her severe impairments.  Brief, [12] at 9.  Plaintiff argues that the ALJ used

an improper standard to evaluate her alleged depressive disorder and anxiety, that the ALJ's

conclusion is not consistent with the evidence of record, and that the ALJ failed to refer to

medical evidence to support his conclusions as to the severity of Plaintiff's mental limitations.

The regulations set forth a specific method, commonly referred to as the "technique," for

determining the severity of a mental impairment. See 20 C.F.R. §§ 404.1520a and 416.920a.[4]

The ALJ is required to perform this analysis if he finds that the claimant has a medically-

determinable mental impairment. Id. If the ALJ determines that the claimant's mental

impairment is severe, he must then make a determination of the claimant's mental residual

functional capacity. This analysis is more detailed than the analysis for the determination of

severity of the mental impairment and is made by assessing various specific functions which are

generally required by competitive remunerative work. The Social Security Administration has

stated that these functions include the abilities to "understand, carry out, and remember

instructions; use judgment in making work-related decisions; respond appropriately to

supervision, co-workers, and work situations; and deal with changes in a routine work setting."

SSR 96-8p, 1996 WL 374184, at *6 (S.S.A. 1996).

In this case, the ALJ stated, as follows:

---

[4]The technique requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas that are considered to be essential to work:  (1) Activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of deterioration or decompensation in work or work-like settings.  The degree of limitation in each of these areas is to be rated as follows:  For numbers (1), (2), and (3), the rating of limitation is to be done on a five-point scale of none, mild, moderate, marked and extreme.  For number (4), a four-point scale of none, one or two, three, and four or more is to be used.  Generally, the conclusion that the impairment is not severe results if the ratings of limitation are none or mild in the first three areas and none in the fourth area.  On the other hand, ratings in the last point for each area represent a degree of limitation which is considered to be incompatible with the ability to work.  20 C.F.R. §§ 404.1520a, 416.920a.

> The claimant's medically determinable mental impairments of depressive
> disorder, not otherwise specified, and anxiety, considered singly and in
> combination, do not cause more than minimal limitation in the claimant's ability
> to perform basic mental work activities and are therefore non-severe (Exhibits
> 12F, 14F).

Id. at 13.  The ALJ then proceeded, with citations to the medical record, to evaluate Plaintiff's

mental impairments using "the four broad functional areas set out in the disability regulations for

evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part

404, Subpart P, Appendix 1).  These four broad functional areas are known as the "paragraph B"

criteria."  Id.

In analyzing the severity of Plaintiff's alleged mental impairment, the ALJ determined

that Brown has mild limitations in the areas of activities of daily living, social functioning, and

concentration, persistence or pace, and that she has had no episodes of decompensation.  Based

on these determinations, the ALJ concluded that Plaintiff's medically determinable mental

impairments are "non-severe."

The undersigned concludes that the ALJ did not err in his analysis.  In his written

opinion, the ALJ specifically discussed the professional assessments in the record, and the

opinion demonstrates careful consideration of the effects of Brown's mental impairment on her

ability to work.  Plaintiff seizes upon isolated remarks made by evaluators, including the nurse

practitioner, but fails to point out the final conclusions of the evaluators and the medical record.

For instance, Plaintiff argues that Dr. Boggs determined that Brown's depression was "very

intense."  Brief, [12] at 10.  However, the entire quote attributable to Dr. Boggs is "[t]he

claimant's loquaciousness seemed to belie depression that is very intense.  It appears to be at a

mild to moderate level." [10-12], Tr. 637.  Dr. Boggs ultimately concluded that Brown is

"somewhat depressed," but that "[s]he communicated well. . . . is able to follow directions and perform routine tasks.  Her limitations appear to be more physical than psychological and she walks with a limp."  Id.  Boggs further commented that Brown "is able to relate appropriately to others and was quite accommodating here.  She is able to handle her own finances."  Id.  Dr. Boggs ultimately concluded that, with support from the local mental health center, Boggs expected Brown's "adaptation to continue about the same during the coming year."  Id. Considering this diagnosis and conclusion, in addition to the other evidence of mental evaluations in the record, see id., Tr. 639, 655, the undersigned concludes that the ALJ adequately considered all applicable limitations in determining that Brown's mental impairments were non-severe.

Furthermore, Fifth Circuit cases post-dating Stone have found that when an ALJ acknowledges a significant impairment while failing to find it "severe," and the ALJ finds that the claimant can return to her past work at the fourth step of the sequential evaluation analysis, a finding of non-disabled should be upheld.  See Adams v. Bowen, 833 F.2d 509, 512 (5th Cir. 1987); see also Chaparro v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987)(noting that whether a claimant could return to his past relevant work was an inquiry unaffected by the test set forth in Stone).  In Jones v. Bowen, the Fifth Circuit upheld a denial of benefits at the fourth and fifth levels of the sequential evaluation analysis despite a Stone error at the second level because it would not constitute an error similar to that found in Stone.  829 F.2d 524, 526 n. 1 (5th Cir. 1987). In this case, the ALJ found that Brown, with her limitations, can return to her past work. Accordingly, there is no basis to disturb the ALJ's finding on this issue.

B. Did the Commissioner consider all of the Plaintiff's functional limitations

resulting from her impairments?

With a broad brush, Plaintiff makes arguments that the Commissioner failed to consider all of Brown's functional limitations resulting from her impairments.  In a few sentences in her initial brief, she argues that there is no evidence that the ALJ considered the combined effect of her impairments, that the ALJ failed to consider all of her vocationally significant limitations, and that the ALJ's assessment of residual functional capacity is not supported by substantial evidence.

While the ALJ did not discuss in great detail the combined effect of her impairments, he did address the issue.  In addition to his detailed discussion of the medical evidence and her various alleged impairments, the ALJ stated,

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1426, 416.920(d), 416.925 and 416.926).

> None of the claimant's physical impairments have the same attendant findings as any impairment contained in Appendix 1.

[10-1], Tr. 14.  Language similar to this has been upheld.  See Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991)(in which the ALJ repeated the impairments he recognized and stated that Plaintiff did not have "'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.'").  There is also no evidence to support an argument that the ALJ "so fragmentized [Plaintiff's] several ailments that he failed properly to evaluate their effect in combination upon [Plaintiff]."  Owens v. Heckler, 770 F.2d 1276, 1282 (5th Cir. 1985). Accordingly, this alleged

Case 3:13-cv-01071-DPJ-FKB   Document 17   Filed 01/27/14   Page 15 of 18

error does not provide a basis for remand or reversal.

Turning to the issue of residual functional capacity ("RFC"), in Plaintiff's initial brief,
she argues that the ALJ failed to consider Nurse Mabry's comments about postural and
environmental limitations produced by the severe impairments recognized by the ALJ, in
particular, the diagnoses of asthma and fibromyalgia.  In her reply, Plaintiff argues extensively
that the ALJ's determination of her residual functional capacity is in error because the RFC
includes no environmental restrictions, despite a finding that Plaintiff has the severe impairment
of asthma.

In his opinion, the ALJ points to evidence in the record, including Plaintiff's testimony,
that conflicted with Nurse Practitioner Mabry's statements about postural and environmental
limitations caused by asthma and fibromyalgia. [10-1], Tr. at 16.  In addition, as explained more
fully below, the ALJ is not obligated to consider evidence offered by Nurse Practitioner Mabry.
Accordingly, these arguments do not provide a basis for reversal or remand.

C. Did the Commissioner give proper consideration to medical opinion evidence?

Plaintiff argues that the Commissioner failed to give due consideration to medical
evidence when he did not conclude that Nurse Practitioner Mabry is an acceptable medical
source.  Brown argues that the ALJ failed to evaluate Mabry's opinion pursuant to the criteria set
forth in 20 C.F.R. §§ 404.1527 and 416.927 and in Social Security ruling 06-03p.

Acceptable medical sources, as found in 20 C.F.R. § 404.1513 and 416.913(a), include
licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed
optometrists (for visual disorders), licensed podiatrists (for foot and ankle impairments only),

and qualified speech pathologists (for speech and language impairments only).  Thus, the

regulations clearly outline what qualifies as an acceptable medical source, and a nurse

practitioner is not among those listed. 20 C.F.R. § 416.913(a).  Although a nurse practitioner

falls under the category of "other sources" in § 416.913(d), the ALJ is not obligated to consider

evidence offered by those sources.  Even so, the ALJ considered Mabry's statements regarding

the frequency of Plaintiff's asthma attacks and noted that they conflicted with Plaintiff's

statements.  The ALJ also pointed out that Mabry's opinion "was not adopted by an acceptable

medical source, such as a medical doctor." [10-1], Tr. at 16.  Accordingly, the ALJ's decision on

this issue is supported by substantial evidence, and this issue does not provide a basis for

reversal or remand.

D.  Did the Commissioner properly evaluate credibility?

Finally, Plaintiff argues that the ALJ failed to evaluate her credibility properly by not

following Social Security Ruling 96-7p.  In this case, the ALJ carefully reviewed Brown's

testimony regarding her asthma, her fibromyalgia, and other complaints related to her alleged

medical conditions to find that her

> medically determinable impairments could reasonably be expected to cause the
> alleged symptoms; however, the claimant's statements concerning the intensity,
> persistence, and limiting effects of these symptoms are not credible to the extent
> they are inconsistent with the above residual functional capacity assessment.

[10-1], Tr. at 15.

The evaluation of a claimant's subjective symptoms is a task particularly within the

province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled.

Harrell v. Bowen, 862 F.2d 471, 480 (5th Cir. 1988).  To prove disability resulting from pain, an

-16-

individual must establish a medically determinable impairment that is capable of producing

disabling pain. 20 C.F.R. §§ 404.1529(a), 416.929(a)(1997); Ripley v. Chater, 67 F.3d 552, 556

(5th Cir. 1995). Once a medical impairment is established, the subjective complaints of pain

must be considered along with the medical evidence in determining the individual's work

capacity. Id.

In his opinion, the ALJ fully discussed the plaintiff's medical condition based upon the

records that were before him. Because the ALJ's opinion shows that the ALJ considered

Brown's complaints of pain along with her activities and the medical evidence, the undersigned

finds that the record contains substantial evidence to support the ALJ's decision and must give

considerable deference to the ALJ's evaluation of Plaintiff's credibility and severity of

limitations. Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991). Accordingly, the ALJ's

decision on this issue is supported by substantial evidence, and the ALJ's decision must be

upheld.

## IV. CONCLUSION

In sum, the undersigned finds that the ALJ correctly analyzed the applicable law, that

substantial evidence supports his decision, and that no reversible error exists. Accordingly, the

undersigned recommends that the Motion to Affirm the Commissioner's Decision [14] be

granted, and the Motion for Summary Judgment filed by Plaintiff [11] be denied.

The parties are hereby notified that failure to file written objections to the proposed

findings, conclusions, and recommendation contained within this report and recommendation

within fourteen (14) days after being served with a copy shall bar that party, except upon

grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as

amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79

F.3d 1415, 1428-29 (5th Cir. 1996).

      Respectfully submitted, this the 27th day of January, 2014.


                         _____/s/ F. Keith Ball _____

                         UNITED STATES MAGISTRATE JUDGE